UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MIGUEL DELGADO,**<br><br>**Plaintiff,**<br><br>v.<br><br>**PROGRESS FINANCIAL COMPANY, dba PROGRESO FINANCIERO, a Foreign Corporation; and DOES 1 to 10, Inclusive.**<br><br>**Defendants.** | 1:14-cv-00033-LJO-MJS<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO COMPEL ARBITRATION (DOC. 12)** |

## I. INTRODUCTION

Plaintiff Miguel Delgado brings this action for alleged violations of the Telephone Consumer Protection Act (TCPA) (47 U.S.C. §227(b)(1)(A)(iii)) and California's Rosenthal Fair Debt Collection Practices Act (RFDCPA or Rosenthal Act)(CAL. CIV. CODE § 1788). Defendant Progreso Financiero moves to compel arbitration in accordance with agreements and pursuant to the Federal Arbitration Act. (FAA) (9 U.S.C. § 1 *et seq*.). For the reasons set forth below, the Court GRANTS Defendants' motion.

## II. BACKGROUND

On December 26, 2012, Plaintiff Miguel Delgado entered into a Loan Agreement with Defendant Progreso Financiero to borrow $1300. Doc. 12-4.[1] Along with the Loan Agreement, Mr. Delgado signed a "Disclosures and Acknowledgements" form and an "Arbitration Agreement." The Loan Agreement contains an arbitration clause that stating that Mr. Delgado agrees to the terms of the

---

[1] The agreements signed by Plaintiff and provided by Defendant are in Spanish. Doc. 12-4. Defendant provided an English language version of the documents. Doc. 12-5. Plaintiff has not disputed the accuracy of the translated versions. All references in this decision will be to English language versions.

1

Arbitration Agreement. The Arbitration Agreement states in part:

> "Any and all claims, controversies, or disputes arising out of or related in any way to that Truth-in-Lending Disclosure and Loan Agreement entered into by you and us on the same date as this Arbitration Agreement shall be subject to binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("AAA") under the Federal Arbitration Act. This includes, without limitation, (1) all issues concerning the transaction in connection with which this Arbitration Agreement has been executed; (2) initial claims, counterclaims, cross-claims, and third-party claims, whether arising in law or equity, and whether based upon federal, state, or local law; contract; tort; fraud or other intentional tort; constitution, common law, or statute; (3) any issue as to whether any such claims, controversies, or disputes are subject to arbitration; and (4) any claims, controversies, or disputes that would otherwise be subject to class actions."

The Disclosure form contains a clause authorizing Progreso Financiero to contact Mr. Delgado electronically, stating, in part:

> "You agree that you will accept calls, SMS text messages, emails, and other electronic communications from us regarding your loan application, your loan payments, the collection of your loan account, promotions and other important communications. You understand these calls could be automatically dialed and a recorded message may be played. You agree that we may leave a voicemail message on your mobile phone or send you a SMS text message to your mobile phone, which may include information about the delinquency status of your account. You agree that such calls and electronic communications will not be unsolicited calls for purposes of state and federal law."

Mr. Delgado alleges that at some point after January 9, 2013, "Defendant caused Plaintiff's telephone to ring repeatedly and continuously to annoy Plaintiff" and "communicated with such frequency as to be unreasonable under the circumstances and to constitute harassment." Compl. at ¶¶ 10. Subsequently, Mr. Delgado alleges that he retained a bankruptcy attorney and that the bankruptcy attorney contacted Progreso Financiero to request that future communications be directed to him. Compl. at ¶¶ 12-13. Mr. Delgado claims that his attorney sent letters of representation to Progreso Financiero around October 15 and December 18, 2013. Compl. at ¶¶ 14, 17 & Ex. A- B.  Mr. Delgado claims that Progreso Financiero continued to contact him repeatedly on the phone, using an automatic telephone dialing system and pre-recorded voice (Compl. at ¶¶ 15, 18, 23, 29) and sent him a collection

letter on December 5, 2013. Compl. at ¶ 16, Ex. B.

Mr. Delgado claims that he never consented to be contacted by Progreso Financiero by an automatic telephone dialing system or an artificial or prerecorded voice, but that even if it could be construed that he did consent to these communications at some point, this consent was later revoked. Compl. at ¶¶ 24-25. Mr. Delgado also claims that he has never had an "established business relationship" as defined under the TCPA. Compl. at ¶ 26.

Mr. Delgado filed this Complaint on January 9, 2014, seeking injunctive relief and damages. Mr. Delgado claims that Progreso Financiero's use of an automatic telephone dialing system and pre-recorded voice on calls to his cellular phone violated the TCPA. Compl. at ¶ 35. He further claims that Progreso Financiero violated various subsections of the RFDCPA when it intentionally and coercively (a) caused his phone to ring with such frequency as to cause annoyance; (b) communicated with such frequency so as to constitute harassment of a debtor; (c) continued to contact him after being referred to his attorney; and (d) failed to comply with the federal Debt Collection Practices Act. Compl. at ¶¶ 31-32.

Progreso Financiero responded with a Motion to Compel Arbitration, pursuant to the FAA, alleging that the conduct at issue must be resolved by arbitration.

### III. STANDARD OF DECISION

Under the FAA, "A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Section 2 "create[s] a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).While the FAA reflects a "liberal federal policy favoring arbitration," *AT & T Mobility v. Concepcion*, 131 S.Ct. 1740, 1745 (2011) (quoting *Moses H. Cone*, 460 U.S. at 24), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any

dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "[T]he federal law of arbitrability under the Federal Arbitration Act governs the allocation of authority between courts and arbitrators. Because the FAA mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed, the FAA limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal citations and quotations omitted). In construing arbitration agreements, courts must "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

## IV. DISCUSSION

### 1. Legal Background

<u>Choice of Law</u>. The Loan Agreement identifies California as the forum state. Doc 12-5 at ¶ 12. Additionally, Plaintiff is a California resident, the activities at issue occurred in the state of California and neither party has requested an alternative forum. Accordingly, this Court applies California law in its analysis of the scope of the Arbitration Agreement. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010) ("When an agreement contains a choice of law provision, California courts apply the parties' choice of law unless the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws ... dictates a different result." (internal quotations omitted)).

<u>Scope of Arbitration Agreements</u>.  The scope of the claims governed by an arbitration clause depends on the language used in the clause. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). When an agreement contains broad language, the Ninth Circuit has compelled arbitration when (a) objections or defenses are "intertwined with the merits of the dispute" (*Id.* at 1134); and (b) alleged tortious conduct was based on account-related activity. *Morgan Keegan & Co., Inc. v. Grant*, 486 F. App'x 678, 679 (9th Cir. 2012). However, if the parties use narrower language, the

4

Court's analysis should reflect the parties' narrower intentions.  In *Cape Flattery Ltd. v. Titan Maritime, LLC*, the Ninth Circuit explained that arbitration clauses using the phrases "arising under," "arising out of," and "arising hereunder" have been "narrowly construed" to encompass disputes "relating to the interpretation and performance of the contract itself." 647 F.3d 914, 922 (9th Cir.2011).

As the Central District of California recently discussed in *Brown v. DIRECTV*, several district courts in the Ninth Circuit have compelled arbitration of debt-collection related TCPA claims. CV 12-08382 DMG EX, 2013 WL 3273811 at *6 (C.D. Cal. June 26, 2013)(quoting *Cayanan v. Citi Holdings, Inc.*,  928 F.Supp.2d 1182, 1207 (S.D.Cal. Mar.1, 2013) ("calls made to plaintiffs 'because Plaintiffs had failed to make timely payments on their accounts,' 'for the limited purpose of collecting money owed them,' and 'not ... for advertising, marketing, or other purposes unrelated to the accounts,' were 'related to the delinquent credit accounts' and thus TCPA claims based on those calls were covered by Citi arbitration clause"); *Coppock v. Citigroup, Inc.*, C11–1984–JCC, 2013 WL 1192632, at (W.D.Wash. Mar. 22, 2013) ("same"); *McNamara v. Royal Bank of Scotland Grp.*, PLC, 11–CV–2137–L WVG, 2012 WL 5392181, at *7 (S.D.Cal. Nov.5, 2012) ("same").

The *Brown* case itself was based on a contract for cable television serviced. Before placing his order, the plaintiff  in that case agreed to terms and conditions which included an agreement to arbitrate "any dispute arising under or relating to your agreements or service with DIRECTV®, which cannot be resolved informally." *Id.* at *2. Plaintiff alleged that he cancelled service, but continued to receive bills. *Id.* at *2. Subsequently, his debt was sold to a collection agency who contacted the plaintiff in a manner he alleged violated the TCPA. Noting that the contract at issue contained a clause providing for collections costs, the Court held that the ability to collect on an unpaid contract is generally "related to" that contract. *Id.* at *6.  It went on to hold "that is all that is required for the claims against DIRECTV to fall within the scope of the arbitration clause." *Id.*

Similar decisions have been reached by courts in other jurisdictions. *See Owings v. T-Mobile USA, Inc.*, 3:12-CV-1385-J-12, 2013 WL 4401824 at *7 (M.D. Fla. Aug. 15, 2013)("The alleged violations are tied directly to charges that are set forth in the Service Agreement. Thus, Plaintiff's claims

5

have the requisite substantial relationship and nexus to the contract and the agreement to arbitrate."); *Montgomery v. Applied Bank*, 848 F. Supp. 2d 609, 619 (S.D.W. Va. 2012)("The Court finds that the alleged "criminal" actions associated with the placing of phone calls to collect on a debt are not beyond the scope of the Agreement because the Court cannot say 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'").

The sole exception to this trend comes out of the District of Colorado. In *Wagner v. Discover Bank*, the district court held that the arbitration clause in the plaintiff's credit card agreement applied to "disputes that 'aris [e] from or relat[e] to' an Account, a prior account, an application, the relationships resulting from the Account, or the scope and enforceability of the arbitration provision, Cardmember Agreement, or prior agreement." No. 12-CV-02786-MSK-BNB, 2014 WL 128372 at *5 (D. Colo. Jan. 13, 2014). The district court held that while the existence of the debt was related to the agreement, "[t]he manner of collection–whether calls were made, how frequently they were made, and what was said during them–has nothing to do with either the Account, the terms of the Cardmember Agreement, or the parties' relationship." *Id* (citing *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995)("An arbitration clause does not extend to all disputes of any sort ... but only to disputes touching specified provisions of the agreement."). Because the defendant did not identify a term governing the account which specifies how it would collect on the account, the district court held that such activities were not encompassed by it. *Id.*

Plaintiff cites a related case, *In re Jiffy Lube Int'l, Inc.* (847 F. Supp. 2d 1253, 1262 (S.D. Cal. 2012)) for its holding that a TCPA claim may not be subject to an "incredibly broad" arbitration clause. Doc. 14 at 10. The district court, however, assumed for the sake of its analysis that the arbitration clause was limited to issues that arose out of or related to the underlying contract. *Jiffy Lube* at 1263. On this basis, the district court found that the scope of the contract (which covered conditions of Plaintiff's oil change) extended to solicitations for future business. *Id.*

**2.  Plaintiff's TCPA Act Claims**

Mr. Delgado does not dispute that he signed the Arbitration Agreement at the time he applied for

a loan from Progreso Financiero; nor does he dispute the validity of the agreement. Doc. 14 at 2. Mr. Delgado argues, however, that the allegedly tortious conduct at issue falls outside the scope of the Arbitration Agreement and is therefore actionable under the TCPA and RFDCPA.

<u>Scope of the Arbitration Agreement</u>. As outlined in Section III (1), *infra*, Mr. Delgado agreed to various terms and conditions when he applied for his loan. The Loan Agreement describes the terms and conditions of repayment and includes a clause attesting that Mr. Delgado had read and agreed to the Arbitration Agreement. Doc. 12-5 at 4.  In pertinent part, the Arbitration Agreement requires that "[a]ny and all claims, controversies, or disputes arising out of or related in any way to [the Loan Agreement]" shall be arbitrated. Doc. 12-5 at 5. The use of the "related to" language is a signal that the scope of the agreement is broad under Ninth Circuit case law and encompasses claims beyond the four corners of the contract. Further, the Arbitration Agreement specifically states that it includes claims "whether arising in law or equity, and whether based upon federal state or local law; contract; tort; fraud or intentional tort . . ." . Doc. 12-5 at 5. Finally, the Court notes that the parties did provide for limited exception to the general obligation to arbitrate claims; paragraph 10 of the Arbitration Agreement preserves the parties rights' to litigate matters in Small Claims Court. Doc. 12-5 at 6. This is the sole exception the parties intended.

Mr. Delgado alleges that Progreso Financiero's use of an automatic dialing system and pre-recorded voice to contact him about the repayment status of his loan is not related in any way to the Loan Agreement. Yet, Mr. Delgado signed a "Disclosure Form", which  specifically attested to the fact that he agreed to "accept calls, SMS text messages, emails and other electronic communications from us regarding your loan application, your loan payments, *the collection of your loan account . . .*" and that he understood that "these calls *could be automatically dialed and a recorded message may be played*." Doc. 12-5 at 7 (emphasis added).

This Court finds that Progreso Financiero's ability collect payment due under the terms of Mr. Delgado's Loan Agreement is "related to" that contract within the context of the FAA. Here, the Agreement's broad language, which explicitly includes "all claims" including "tort" and "intentional

7

tort" encompasses Progreso Financiero's debt collection related activities, including practices discussed in the Disclosure Form –such as use of text messages and pre-recorded calls- for the narrow purpose of Defendant's ability to contact Plaintiff about his loan account, payments and collections. This finding is consistent with case law from our sister district courts in the Ninth and Eleventh Circuits. *See* Section V(I), *infra.* The decision reached by the *Wagner* court in the District of Colorado is distinguished by the fact that the Defendant in that case could not point to any part of the contract that governed manner of collection. *Wagner,* 2014 WL 128372 at *5. In contrast, the Disclosure form Mr. Delgado signed identified various methods Progreso Financiero anticipated it might employ to communicate with Mr. Delgado about his account. The facts of *Jiffy Lube*, are also distinct in that the communications at issue in that case were for the purposes of soliciting future business and not related to the terms of the underlying contract.

Accordingly, this Court orders parties to arbitrate Plaintiff's TCPA claims.

### 3.     Plaintiff's Rosenthal Act Claims

Mr. Delgado's claims under the Rosenthal Act are broader than his TCPA claims. He alleges that Progreso Financiero's frequent calls and contact with him- even after it was notified that Mr. Delgado was represented by council- violated specific provisions of the RFDCPA and its more general provisions incorporating the federal Fair Debt Collection Practices Act (prohibiting debt collectors from using "unfair or unconscionable means" to collect a debt). Compl. at ¶¶31-32. Mr. Delgado does not explicitly refute Defendant's assertion that the RFDCPA claims are encompassed by the Arbitration Agreement, but the Court will assume for the sake of this analysis that the arguments presented in Section IV(A) of Mr. Delgado's Opposition apply to his Rosenthal Act Claims as well. Doc. 14 at 5-13. This Court finds that conduct alleged in the context of Mr. Delgado's RFDCPA claims is related to the Loan Agreement within the context of the FAA. The Court finds that for the same reasons discussed in Section (V)(2), *infra,* these activities were conducted for the purpose of communicating with Mr. Delgado about repayment under the terms of his Loan Agreement. While these claims are based are broader facts and legal theories, the underlying conduct is still squarely rooted in agreement between the

parties and thus is encompassed by the Arbitration Agreement.

Mr. Delgado claims that his RFDCPA claims are not subject to the FAA because the RFDCPA does not permit waiver of a debtor's right to a jury trial. Doc 14 at 14. Defendant disagrees with Plaintiff's reading of the RFDCPA. Doc. 17 at 10. The Court, however, does not need to resolve this issue because even if Plaintiff's interpretation is correct, the FAA preempts state law. *AT&T Mobility*, 131 S. Ct. at 1747 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."); *see also Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 281 (1995) ("What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause.")

Accordingly, this Court orders parties to arbitrate Plaintiff's Rosenthal Act claims.

## V. CONCLUSION AND ORDER

In light of the above findings, Progreso Financiero's motion to compel arbitration is GRANTED. Mr. Delgado and Progreso Financiero are hereby ORDERED to proceed to arbitration in accordance with the terms of the Arbitration Agreement. Because all claims outside of arbitration against Defendant are barred, they are hereby DISMISSED without prejudice. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir.1988).

IT IS SO ORDERED.

Dated:   **April 30, 2014**          /s/ Lawrence J. O'Neill
                                     UNITED STATES DISTRICT JUDGE